## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**BETTYE BEDWELL, Chapter 7 Trustee of the**
**Bankruptcy Estate of Arthur Levy**                                    **PLAINTIFF**

v.                                            **No. 2:18-cv-108-DPM**

**G. ADAM COSSEY;  HUDSON POTTS &**
**BERNSTEIN LLP;  and JOHN DOES 1-10**                         **DEFENDANTS**

### ORDER

Affirmed.  That would have been the judgment of the Arkansas Supreme Court on the merits had Cossey and his law firm perfected Dr. Levy's appeal by filing the trial court's record on time.  No issue of jurisdictional significance is presented, and so the case might have been transferred to the Arkansas Court of Appeals for decision.  If so, that appellate court would have come to the same conclusion.

First, the circuit court did not abuse its discretion by admitting Dr. William Rutledge's expert testimony.  The Dowd Estate had to establish Dr. Levy's alleged malpractice with testimony from another medical care provider who satisfied Arkansas Rule of Evidence 702 and the malpractice statute's criteria, Ark. Code Ann. § 16-114-206(a)(1), which have been altered and glossed by Arkansas precedent.  The statute's same-specialty provision fell to constitutional challenge some years ago.  *Broussard v. St. Edward Mercy Health System, Inc.*, 2012 Ark. 14, 6–

7, 386 S.W.3d 385, 389.  But its animating idea remains alive and well: under Rule 702, a proposed expert must have a solid experiential and educational basis for his opinions.

When this case was tried, Dr. Rutledge had been practicing medicine in Arkansas for almost four decades, first as a surgeon and then as a general practitioner.  He had cared for more than one hundred patients with suspected appendicitis.  He had taught at the University of Arkansas for Medical Sciences.  And he was then serving on the Arkansas State Medical Board.  As Dr. Rutledge said, there's lots of overlap between his general practice and Dr. Levy's family practice. Neither was board certified as an emergency room doctor, but, as Dr. Levy acknowledged at trial, most ERs are staffed by primary care physicians and family physicians.  Dr. Rutledge's experience with diagnosing suspected appendicitis is the core of what made him qualified to evaluate Dr. Levy's care of Mrs. Dowd.  ARK. R. EVID. 702; *Cathey v. Williams*, 290 Ark. 189, 192–93, 718 S.W.2d 98, 101 (1986); *Thomas v. Sessions*, 307 Ark. 203, 209, 818 S.W.2d 940, 943 (1991).  Unlike the perinatologist who did not treat babies after birth, but sought to testify about a failed diagnosis involving an infant more than a year old, Dr. Rutledge had experience with the circumstances Dr. Levy confronted when Mrs. Dowd came to the ER in Helena.  *First Commercial Trust Co. v. Rank*, 323 Ark. 390, 400–01, 915 S.W.2d 262, 266–67 (1996).

Dr. Rutledge likewise satisfied the statute's locality requirement, which is not particularly strict.  The Estate didn't need another doctor from Helena;  it needed a doctor familiar with localities having facilities, practices, and advantages similar to Helena's.  *Rank*, 323 Ark. at 401, 915 S.W.2d at 267.  Based on his approximately forty years of practice in Arkansas, his teaching at UAMS, his service on the State Medical Board, and his trial attendance during all of Dr. Levy's testimony (including about Helena's medical details), Dr. Rutledge spoke from a solid local point of view.  He knew, in particular, what diagnostic tools Dr. Levy had at hand in Helena.  The circuit court was well within its discretion in admitting this expert testimony.  *Brazeal v. Cooper*, 2016 Ark. App. 442, *2, 503 S.W.3d 829, 830–31.

Because Dr. Rutledge was qualified to testify about what Dr. Levy did right and what he did wrong, the circuit court also did not abuse its discretion by not granting Dr. Levy's request for a new trial on the qualification issues.  *Suen v. Greene*, 329 Ark. 455, 459, 947 S.W.2d 791, 793 (1997).

Second, there was no failure of proof on causation.  Dr. Rutledge was unequivocal:   Dr. Levy's failure to catch Mrs. Dowd's appendicitis—by taking an X-Ray, doing a CT scan, or keeping her overnight for observation—led to the infection that caused her death. Dr. Levy's expert agreed that her ruptured appendix was one of two possible sources for the fatal infection.  Dr. Levy placed blame on the

hospital, the surgeon who eventually operated on her, and those who transported her to Southaven and then Little Rock. Proximate cause is almost always a fact question, *Coca-Cola Bottling Co. of Memphis, Tennessee v. Gill*, 352 Ark. 240, 254, 100 S.W.3d 715, 724 (2003), and it was on this record. Whatever may have been the failings of others involved in caring for Mrs. Dowd, substantial evidence supported the jury's conclusion that Dr. Levy's failure to diagnose her appendicitis during the first ER visit was a proximate cause of her eventual death. *Stecker v. First Commercial Trust Co.*, 331 Ark. 452, 458, 962 S.W.2d 792, 796 (1998). The circuit court therefore did not err in denying Dr. Levy's motions for judgment as a matter of law either before or after the verdict.

Third, the jury's decision not to put any negligence on the hospital, Helena Regional, or the surgeon, Dr. Major, did not justify a new trial, either. The Estate dropped its claims against these parties. Their alleged negligence went to the jury on Dr. Levy's demand for apportionment of nonparty fault. He thus had the burden of proof. Dr. Levy shouldered that burden through testimony from his expert witness and cross examination of the Estate's witnesses. But the jury, of course, wasn't required to believe this testimony. Rare is the negligence case where the party with the evidentiary burden is entitled to judgment as a matter of law. *Potlatch Corp. v. Missouri Pacific Railroad*

*Co.*, 321 Ark. 314, 317–18, 902 S.W.2d 217, 220 (1995). The circuit court didn't err by denying Dr. Levy's "I proved my case" motions.

Whether a new trial was justified because the jury's verdict was clearly against the preponderance of the evidence is a closer call. ARK. R. CIV. P. 59(a)(6). The verdict reflects that the jury wrestled with these issues, at least as to the hospital, because only nine jurors agreed that Helena Regional wasn't negligent. *Doc. 50-1 at 54.* The trial judge saw and heard all the witnesses. The evidentiary balance in this record is not so one-sided that an appellate court should second guess his informed discretion and order a new trial. *Switzer v. Shelter Mutual Insurance Co.*, 362 Ark. 419, 427–28, 208 S.W.3d 792, 797 (2005).

Fourth, the cases teach that mistrial is a drastic remedy. *E.g., Stecker*, 331 Ark. at 461, 962 S.W.2d at 797. The trial court has wide discretion here in general and when dealing with counsel's statements in particular. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 787, 918 S.W.2d 138, 148 (1996). Judge Mitchell did not abuse his discretion. Because Dr. Levy had the burden of proving the negligence of the others involved in Mrs. Dowd's case, it was fair comment to argue, as the Estate's lawyer did, that Dr. Levy hadn't called any witnesses connected with these other parties. The remark, in rebuttal closing, about Dr. Levy's failure to testify about his care went too far, though. The Court is not persuaded that the closing argument for Dr. Levy invited this remark. It offended the spirit of Ark. Code Ann. § 16-114-

207(3), which mandates that no medical care provider must give expert testimony against himself or herself.  But, the circuit court promptly sustained the objection to the remark and told the jury to disregard it. The court had already told the jury that the lawyers' words weren't evidence.  It was not an abuse of discretion to conclude that all this was adequate in the circumstances and that no mistrial was necessary. *Stecker*, 331 Ark. at 461, 962 S.W.2d at 797.

Fifth, the trial court did not abuse its discretion by letting the jury's $2,805,838.88 damages verdict stand.  Giving the evidence its greatest probative force, substantial evidence supports this award. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 742, 120 S.W.3d 61, 68–69 (2003).  Mrs. Dowd was a vibrant woman in her mid-forties, devoted to her husband, children, sister, mother, and friends.  She worked, sang in her church's choir, and enjoyed life.  The jury was instructed about all the elements of damage available to the Estate and the statutory beneficiaries.  The verdict asked the jury only for a bottom line.

The Estate offered proof of slightly more than $800,000 in pecuniary losses, medical bills, and funeral expenses.  That leaves approximately $2,000,000 for Mrs. Dowd's pain and suffering, her loss of life, and her family members' mental anguish.  The Court sees no indication of passion or prejudice in the jury's decision.  *Allstate Insurance Co. v. Dodson*, 2011 Ark. 19, 14–15, 376 S.W.3d 414, 425.  Mrs. Dowd suffered on and off for nine days.  *Garrison v. Hodge*, 2018 Ark.

–6–

App. 556, 14–15, 565 S.W.3d 107, 117.  She valued her life.  *One National Bank v. Pope*, 372 Ark. 208, 214–15, 272 S.W.3d 98, 102–03 (2008).  And her family's grief was both real and enduring.  *Tucker*, 353 Ark. at 742, 120 S.W.3d at 68.  Arkansas has abandoned the notion that grief must be extreme to qualify.  ARK. CODE ANN. § 16-62-102(f)(2); *Tucker*, 353 Ark. at 745–46, 120 S.W.3d at 71.  As Dr. Levy points out, for six of those nine days Mrs. Dowd was under the care of others.  But this is simply another instance of the proximate cause dispute.  The jury could reasonably have traced all the damages to what it concluded was Dr. Levy's original negligence.

Dr. Levy's lawyers made a serious mistake.  Their tardy filing of the record deprived the Arkansas appellate courts of jurisdiction to reach the merits.  *Rose Care, Inc. v. Jones*, 355 Ark. 682, 687, 144 S.W.3d 738, 741 (2004).  On those merits, however, the Dowd Estate would have prevailed.  Because the result in the appeal would have been no different, his lawyers' mistake caused Dr. Levy no damage.  *Swift Transportation Co. of Arizona, LLC v. Angulo*, 716 F.3d 1127, 1133–34 (8th Cir. 2013) (Arkansas law).  Cossey and his law firm are therefore entitled to summary judgment on count II (appeal-related negligence) of Bedwell's amended complaint.

So Ordered.

_WPMarshall Jr._

D.P. Marshall Jr.
United States District Judge

21 December 2020