# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**BETTYE BEDWELL, Chapter 7 Trustee of the**
**Bankruptcy Estate of Arthur Levy**                    **PLAINTIFF**

**v.**                    **No. 2:18-cv-108-DPM**

**G. ADAM COSSEY;  HUDSON, POTTS &**
**BERNSTEIN LLP;  and JOHN DOES 1-10**        **DEFENDANTS**

## ORDER

 **1.** This lawyer-conduct case is rooted in an approximately $3 million medical malpractice judgment and vigorous efforts to collect on it.  Counsel who secured that judgment now represent the trustee of the bankruptcy estate of the doctor who committed the medical malpractice.   In this case, the bankruptcy trustee alleges legal malpractice and breach of fiduciary duty by the lawyer and firm who represented the doctor and the trustee in a failed appeal.  Collection efforts have been stymied by the doctor's bankruptcy and his insurer's liquidation.

 **2.** The estate of Cora Dowd won its case against Dr. Arthur Levy in the Circuit Court of Phillips County, Arkansas.  Dr. Levy appealed.  Oceanus Insurance Company covered him through a policy issued to the company he worked for.  The policy provided $1 million in coverage with a $100,000 self-insured retention by the company.  The

Dowd estate didn't sue or recover against that company, which provided doctors to hospitals, clinics, and the like.

Oceanus hired new counsel to pursue the appeal, the firm of Hudson, Potts & Bernstein. One of the firm's partners did a lot of work for Oceanus. The firm assigned another partner, Adam Cossey, to take the lead on the Dowd appeal. Dr. Levy also filed bankruptcy—because he was on the hook for the excess judgment. The appeal was delayed because the court reporter straggled in preparing the transcript of the four-day trial. The Arkansas rules and precedent place ultimate responsibility on the appellant and his lawyer to get a complete appellate record filed. ARK. R. APP. P.—CIVIL 7(b); *Morris v. Stroud*, 317 Ark. 628, 630, 883 S.W.2d 1, 2 (1994); *Waste Management & Transportation Insurance Co. v. Estridge*, 363 Ark. 42, 47, 210 S.W.3d 869, 873 (2005). Cossey filed a partial record, got deadlines extended, and secured a writ from the Arkansas Supreme Court to the court reporter directing completion of the transcript.

The Dowd estate moved to dismiss the appeal, arguing that Dr. Levy lacked standing and the trustee of his bankruptcy estate was the proper appellant. Cossey emailed the trustee's lawyer. He sought to represent the trustee, in addition to Dr. Levy, in the appeal seeking reversal of the Dowd estate's judgment.

> What we would like to do is proceed on behalf of both Dr. Levy and the bankruptcy estate. This prevents the plaintiffs from obtaining a dismissal. We see this as a win-win. The

insurer obviously wants to reverse its $1 million loss and also has a duty to Dr. Levy to protect him. At the same time, the trustee can potentially reduce the debtor's liability by $2 million at absolutely no cost. All costs and attorney's fees will be paid totally by the insurer and will not cost the estate a penny. In fact, we will be happy to pay any filing fees associated with obtaining court approval. Essentially, we are a free lawyer for the estate that will provide a chance to dramatically reduce Dr. Levy's insolvency by $2 million (interest has already put the total judgment over $3 million). Even if this creditor is unsecured and way down the list, since there is no cost, there is really no down side.

*Doc. 134-1 at 4.* The trustee's lawyer accepted Cossey's proposal on the condition that Dr. Levy's insurer pay 100% of the costs associated with the appeal. In his email, Cossey mentioned Dr. Levy's insurer several times but did not identify Oceanus as the company. Cossey later signed a verified statement for the Bankruptcy Court stating that neither he nor his law firm represented any interest adverse to Dr. Levy's bankruptcy estate and that both were "disinterested persons" under 11 U.S.C. § 101(14).

Through a combination of circumstances—the out-of-state death of the court reporter's biological father, her computer problems, and Cossey being out of the office on his honeymoon—the Arkansas Supreme Court's final deadline for filing the complete record was not met. Cossey filed various motions for relief. But, the Supreme Court

eventually granted the Dowd estate's new motion to dismiss the appeal.

The appeal came to an end in mid-September 2017, a month when two other key events occurred. Before the Dowd case went to trial, Dr. Levy's employer had merged with TSG/Schumacher—a hospital staffing conglomerate. After the merger, TSG/Schumacher had added Dowd to its list of active claims. Dr. Levy's lawyers (trial counsel and appellate counsel) kept TSG/Schumacher informed about the status of the case. About a week after the Dowd appeal was dismissed, Angela Daigle (a claims manager with TSG/Schumacher) emailed Cossey seeking an update. Cossey's responding email said that the appeal had been dismissed due to the court reporter's failure to file the complete record. Cossey didn't mention that, under Arkansas law, he was ultimately responsible for filing that record. A few days later, Cossey emailed the trustee with a similar explanation about why the appeal had been dismissed. Cossey's email to the trustee included a copy of his earlier email to claims manager Daigle.

A few months later, Cossey communicated by email with Daigle and Brandon Stelly (Daigle's boss at TSG/Schumacher) on a related issue. They sought his advice about an order that had been entered by a South Carolina court, an order that stayed all legal proceedings involving policies with Oceanus. Cossey responded that, because Dr. Levy's debts had by then been discharged in bankruptcy, the Dowd

plaintiffs could only pursue their judgment through a claim against Oceanus's liquidator.  Cossey informed Stelly about an Arkansas statute that could be used to enforce the South Carolina stay order in Arkansas.  He sent him a copy of the statute.

**3.** In this case, the trustee claims that Cossey and his firm committed legal malpractice and violated their fiduciary duty to Dr. Levy's bankruptcy estate.  One loose end about the parties.  The trustee sued some John Doe defendants.  They have not been identified, and the time to serve them has expired.  FED. R. CIV. P. 4(m).  The Does are dismissed without prejudice.  After full briefing, a few months ago the Court granted summary judgment on the trustee's appeal-related malpractice claim.  Cossey and the firm were negligent in not filing the complete appeal record on time.  But, Dr. Levy's appeal would have been lost on the merits;  the trustee's malpractice claim based on Cossey's filing error therefore failed for lack of damage. *Doc. 122.*  The trustee also makes a *respondeat superior* claim against Cossey's law firm.  But, the firm has accepted responsibility for Cossey's actions, so that claim has no work to do.  The trustee also asserts a negligent hiring/retention/supervision/remediation claim against the firm.  To the extent that claim is about the appeal, it too has fallen away.  In any event, because the firm has accepted responsibility for Cossey's actions, any claim for negligent hiring/supervision/training/remediation based on his actions also fails as a matter of law. *Elrod v. G & R*

*Construction Co.*, 275 Ark. 151, 154, 628 S.W.2d 17, 18 (1982).  This case thus comes down to the trustee's claim for breach of fiduciary duty.

Cossey and his firm owed the bankruptcy trustee a fiduciary duty of "undivided" loyalty.  *Cole v. Laws*, 349 Ark. 177, 185, 76 S.W.3d 878, 883 (2002).  They could not act, or fail to act, in any way inconsistent with "the requisite standards of fair dealing, good faith, honesty, and loyalty."  *Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 298, 948 S.W.2d 388, 395 (1997).  Any conduct that conflicted with the bankruptcy trustee's interests was strictly prohibited.  *Berry v. Saline Memorial Hospital*, 322 Ark. 182, 187, 907 S.W.2d 736, 739 (1995).  Self-dealing always violates a lawyer's fiduciary duty.  *Hosey v. Burgess*, 319 Ark. 183, 190, 890 S.W.2d 262, 265–66 (1995); *see also* 1 HOWARD H. BRILL & CHRISTIAN H. BRILL, ARKANSAS LAW OF DAMAGES § 26:2 (6th ed. 2014).

In her pleading, and during the parties' many discovery disputes, the bankruptcy trustee emphasized the close relationship between Oceanus (the insurance company) and Cossey's firm.  The trustee alleged, in particular, that Cossey, his firm, or both knew Oceanus had deep financial problems and didn't tell the trustee.  During discovery, no facts emerged in support of this allegation.  Cossey testified that he and his firm were as surprised as everyone else by Oceanus's going into liquidation.  In the motion briefing, the trustee has abandoned her "knowledge of impending financial collapse" theory.

The trustee maintains, however, that Cossey and his firm favored another Oceanus insured, a Dr. Hashimi, by settling the case against him. The circumstances were different, though. The company for which Dr. Hashimi worked was a named defendant in the other case. Dr. Levy worked for the same company but it was not sued by the Dowd estate. TSG/Schumacher paid to settle the other case because of its exposure; there's no evidence that Cossey, his firm, or Oceanus favored Dr. Hashimi over Dr. Levy or the bankruptcy trustee. Cossey didn't have any basis to seek settlement funding from TSG/Schumacher during Dr. Levy's appeal.

The trustee's remaining breach-of-fiduciary-duty theories fail as a matter of law.

*First*, there's no evidence that Cossey represented interests adverse to the trustee. The relationship between Oceanus, TSG/Schumacher, Dr. Levy, Cossey/Hudson Potts, and the trustee was entirely legitimate. While Cossey's pitch email to the trustee's lawyer didn't name Oceanus as Dr. Levy's insurer, or mention his firm's existing relationship with Oceanus, the trustee's lawyer understood that Cossey was actively representing Dr. Levy's malpractice insurer when that lawyer agreed to Cossey's dual-representation proposal. There was no secret and no conflict. ARK. R. PROF'L CONDUCT 1.7 & cmt. 13. Oceanus, TSG/Schumacher, and the

trustee all had an obvious common interest in getting the Dowd judgment reversed on appeal. *Berry*, 322 Ark. at 187, 907 S.W.2d at 739.

*Second*, even assuming that Cossey should have accepted ultimate responsibility for the late record in his explanatory emails to Daigle and the trustee, the omission did not harm the bankruptcy estate. Here's the background. Cossey's explanation highlighted the court reporter's failings and outlined Cossey's efforts to get the complete record filed. *Doc. 134-1 at 14–17*. As the trustee now emphasizes, Cossey did not disclose a potential malpractice claim against himself and his law firm. A critical fact is murky. It's unclear whether Cossey appreciated the rather esoteric point of Arkansas appellate practice that the appellant's lawyer is responsible for the record even though he's at the mercy of the circuit clerk and the court reporter. *Doc. 125-21 at 47–49*. To give the trustee the benefit of every reasonable inference from the record, the Court assumes that Cossey came to understand this, at least by the time that the Supreme Court had dismissed the appeal.

It's unclear whether Arkansas law required Cossey to disclose the potential malpractice claim. The Arkansas Supreme Court has not spoken on the point. In a limitations case, the Arkansas Court of Appeals has held that the lawyer had no fiduciary duty to disclose a possible legal error, and did not fraudulently conceal any error by continuing to litigate an issue. *Rice v. Ragsdale*, 104 Ark. App. 364, 372–75, 292 S.W.3d 856, 863–65 (2009). The Restatement says in a comment

that the lawyer has a duty to speak in these circumstances. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 20, cmt. c (2000 & Supp. 2021). The commentary to the applicable Arkansas ethics rule provides that a lawyer can't withhold information from the client to serve the lawyer's own interests. ARK. R. PROF'L CONDUCT 1.4, cmt. 7. A comprehensive Court of Appeals decision, in similar circumstances, predicted that the Minnesota Supreme Court would hold that a duty to disclose arises only if a disqualifying conflict of interest is presented. *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628–29 (8th Cir. 2009).

In the end, though, the unsettled Arkansas law makes no legal difference to the trustee's breach of fiduciary duty claim. Cossey's incomplete explanation did not injure the bankruptcy estate. In the words of the model instruction that embodies the essential elements of this claim, the trustee must show that the bankruptcy estate has sustained damages and that the breach of fiduciary duty was a proximate cause of those damages. ARKANSAS MODEL JURY INSTRUCTIONS—CIVIL AMI 1512 (2020). The trustee has not shown any damages caused by the email. The trustee secured new counsel, filed this case, and litigated it with great vigor. No limitations issue was created by Cossey's explanation about why the appeal was lost and who was at fault. The trustee has not offered proof of any resulting harm to the bankruptcy estate.

*Third*, Cossey did not violate his fiduciary duty to the trustee by advising Stelly about how to enforce the South Carolina stay order in Arkansas.   While TSG/Schumacher had no exposure on the Dowd judgment, it was still on the company's list of active claims when Oceanus entered liquidation in mid-September 2017.   Stelly's wanting to know if the South Carolina stay order could be enforced in Arkansas was understandable.   More importantly, Cossey's advice was not adverse to the bankruptcy estate's interests—it was adverse to the Dowd estate, the original plaintiff.   Enforcing the stay order in Arkansas benefited the bankruptcy estate by the forcing the Dowd estate to pursue its judgment through a claim with Oceanus's liquidator.   And Cossey had already informed the trustee about this very issue. *Doc. 134-1 at 15*.

* * *

Motion for summary judgment, *Doc. 125 & 128*, granted. Judgment will issue.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

26 August 2021

–10–